```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3                          —   —   —

     UNITED STATES OF AMERICA,
 4
                Plaintiff,
 5
       v.                                Case No. 19-20540
 6
     DAVID STRAND,                       Hon. George Caram Steeh
 7
                Defendant.
 8    _____/

 9                      SENTENCING HEARING

10          BEFORE THE HONORABLE GEORGE CARAM STEEH
                  United States District Judge
11          Theodore Levin United States Courthouse
                  231 West Lafayette Boulevard
12                      Detroit, Michigan
                  Thursday, January 20, 2022
13

14    APPEARANCES:

15    For the Plaintiff:      CRAIG A. WEIER
                              U.S. ATTORNEY'S OFFICE
16                            211 W. Fort Street, Suite 2001
                              Detroit, MI 48226
17                            (313) 226-9100

18    For the Defendant:      JOHN D. DAKMAK
                              CLARK HILL, PLC
19                            500 Woodward Avenue, Suite 3500
                              Detroit, MI 48026
20                            (313) 965-8300

21

22

23

24
           To obtain a copy of this official transcript, contact:
25              Robert L. Smith, Official Court Reporter
               (313) 234-2612 • rob_smith@mied.uscourts.gov
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

MATTER                                                        PAGE

<u>SENTENCING HEARING</u>

Allocution by Mr. Dakmak..........................6, 16
Allocution by Mr. Weier............................10
Allocution by Mr. Strand...........................21

Proceedings adjourned by the Court.................24

```
 1   Detroit, Michigan
 2   Thursday, January 20, 2022
 3   at about 2:07 a.m.
 4                     —   —   —
 5        (Court, Counsel and Defendant present.)
 6        THE CASE MANAGER:  Please rise.
 7        The United States District Court for the Eastern
 8   District of Michigan is now in session, the Honorable
 9   George Caram Steeh presiding.
10        You may be seated.
11        The Court calls Case No. 19-20540, United States of
12   America v. David Strand.  Counsel, please state your
13   appearances for the record.
14        MR. WEIER:  Your Honor, good afternoon.  And may it
15   please the Court, Craig Weier on behalf of the United States.
16        THE COURT:  All right.  Good afternoon.
17        MR. DAKMAK:  Good afternoon, Your Honor.
18   John Dakmak appearing on behalf of David Strand, who's seated
19   to my left.
20        THE COURT:  Okay.  Thank you.  So this is the date
21   and time set for sentencing in this case.  And in preparation
22   for the hearing, I've had an opportunity to review the
23   memoranda submitted by each side, as well as several letters
24   in support of the defendant, and the presentence
25   investigation report.  And I gather that -- let's see.  A lot
```

1    of paper.  I gather -- it's Mr. Dakmak, right -- Dakmak?

2          MR. DAKMAK:  Dakmak, Your Honor.

3          THE COURT:  Yeah.  Thank you.

4          MR. DAKMAK:  It's okay.

5          THE COURT:  I gather from your submission that you

6    have had the opportunity to review and discuss the

7    presentence investigation report with your client?

8          MR. DAKMAK:  We have, Your Honor.

9          THE COURT:  And are you asking the Court to adopt

10   the factual findings and the application of the guidelines

11   range as it appears in that report?

12         MR. DAKMAK:  As far as the guidelines range goes,

13   as far as loss calculations, as we stated in our memorandum,

14   we are stipulating or agreeing to a $1,001,500 loss

15   calculation to be set as restitution.  We have filed some

16   objections to the presentence report on the factual basis.

17   They are, in my opinion, some minor changes, but I do think

18   that they are valid.  We had some of them resolved with an

19   amendment to the presentence investigation report.

20         I've had further conversation with Mr. Weier as to

21   the outstanding matters.  None of the objections that we've

22   set forth change the guideline score, change the loss

23   calculation.  But if, perhaps, Mr. Weier wants to comment on

24   this, I think we have resolved any outstanding issues and

25   essentially prepared to move forward at this point.

1      THE COURT:  I see.  Thank you, Mr. Dakmak.

2           Mr. Weier, as it relates to this issue.

3      MR. WEIER:  I have nothing further to add as to the

4  objections, Your Honor.

5      THE COURT:  Okay.  So would you want to describe

6  what that means for -- as an amendment?

7      MR. WEIER:  Your Honor, I'm comfortable with the

8  addendum to the presentence report and the presentence report

9  as it currently reads.  As Mr. Dakmak indicated, the changes,

10  I don't want to call them cosmetic or nonmaterial changes or

11  objections, but they don't affect the guideline sentence in

12  any way, and as Mr. Dakmak suggested, they are relatively

13  minor.  So whether or not the Court adopts them to the

14  government's point, it is not all -- it is not urgent, one

15  way or another.  I think we disagree and we have noted our

16  disagreements to the objections to the probation officer.

17  Who has indicated them in the addendum to the presentence

18  report, but we think that the presentence report, as it

19  stands, is accurate.

20      THE COURT:  All right.  Thank you, Mr. Weier.

21           I have a couple of questions and I know we've got

22  other things to cover, but, Mr. Dakmak, you've

23  got a -- you've agreed to a significant amount of restitution

24  at a million dollars.  What leads you to think that your

25  client will be able to pay that back?

1      MR. DAKMAK:  As we set forth in our memorandum, and

2  I'm prepared to elaborate further at this time, Your Honor,

3  in the course of my client being indicted several years ago,

4  this process that the world is in has clearly slowed the

5  judiciary down.  We're now at the end of this matter, which I

6  think the indictment came in 2019.  There had been an

7  investigation and I had been working with Mr. Weier months

8  and months prior to the actual -- I should say, filing of the

9  information, not indictment.

10      In that time frame since my client's termination

11  from the complainant's business, Ascentium Capital, LLC, he

12  started up a new business, building on his expertise in the

13  truck financing world, starting a primarily eCommerce,

14  web-based company that works and allows my client to be a

15  facilitator between the trucking industry and financiers of

16  the trucking industry, and streamlining that process.  He's,

17  quite frankly, even with this case pending, with everybody

18  knowing that he has pled guilty several years ago to this

19  serious offense, he has built the company up.

20      Moving forward, and Your Honor has a wide range of

21  possibilities for sentence, and we acknowledge that.  The

22  reason why we're asking for a probationary sentence in this

23  case, and we do understand that it is much lower than the

24  guidelines, but that reason is his ability to repay

25  restitution in this case.  He is the brains behind, for lack

```
 1    of a better term, this operation.  If he is allowed to remain
 2    out of custody and serve a probationary sentence or even a
 3    modification of some kind, of blended semi-incarcerated
 4    sentence in a halfway house or home confinement, he'll be
 5    able to take his expected earnings in the next year, the year
 6    to come after that, and pay this restitution off.
 7              I've had a lot of conversations with my client
 8    about that, and I've expressed to him, please don't have me
 9    go up there and promise something that you can't deliver on,
10    because that's going to become an issue later on.  But we are
11    steadfast, at this point, in being able to say that if my
12    client can continue operating his business, and I do state,
13    Your Honor, that if he's in prison, that will not be the
14    case, because the nature of the industry, that --
15              THE COURT:  What does that mean?  I'm sorry.  What
16    does that mean?
17              MR. DAKMAK:  It's a fledgeling business, Your
18    Honor.  It is based on his relationship within the trucking
19    industry.  He has two employees.
20              THE DEFENDANT:  Two employees.
21              MR. DAKMAK:  Two employees, himself, but if he's in
22    custody, the business will fail because it is such -- in such
23    an early stage.  He has to be there to operate the company,
24    to keep those relationships open, to keep the
25    business-to-business venture going.  So I would suggest, Your
```

 1   Honor, that it is reasonable and just to have a probationary
 2   sentence -- noncustodial, I should say.  If that's the case,
 3   within the first of February, February 1, he should be able
 4   to produce $250,000 towards restitution.  Thereafter, we're
 5   suggesting a quarterly payment of $100,000, which would take
 6   the better part of two years, so perhaps a three-year
 7   probationary sentence, to give some cushion, in case there is
 8   a business dynamic that is unforeseen and something happens
 9   that would slow or maybe even accelerate restitution
10   payments, but that is how he's going to make that happen.
11          Quite frankly, if the business fails, I
12   don't -- and I have a lot of faith in this man and his
13   entrepreneurial ways, but if this business fails, I don't see
14   how, realistically, a $1 million payment gets made.  And to
15   note that on top of this $1,001,500 restitution award that
16   we're anticipating, Ascentium Capital, in 2016, received a
17   consent judgment against my client for 2,745,000-and-some-odd
18   dollars.  That's been affected.  It is part of the -- it is
19   the record of the Oakland Circuit Court.  It is there.  So
20   there is that obligation also.
21          That is how I propose that he will make meaningful
22   restitution in this case and whatever else can be done with
23   Ascentium's consent judgment, which, since 2016, there has
24   been no action by Ascentium to perfect or -- I should say,
25   execute on it, any garnishment or anything like that, but

```
 1   it's there.  He's ready to address that.  It is essentially
 2   why we are here today, to bring his criminal wrongdoing to an
 3   end and move on to the next stage, and we do understand that
 4   meaningful restitution is required.
 5           I just wanted to -- I want the Court to understand
 6   that he doesn't come from wealth, he doesn't come from a
 7   large trough of money.  There has never been an allegation in
 8   this case that that $1 million that he defrauded Ascentium
 9   of, and he's not hiding that, in any stretch of the
10   imagination, that did not go into his hands.  That was
11   basically for -- excuse the euphemism -- an opportunity to
12   rob Peter to pay Paul, to keep a fledgeling business
13   operational.  There has never been an allegation that he
14   lived a lavish lifestyle because of his defrauding Ascentium.
15   It was always an effort to keep the business going.
16           And, yes, of course, if the business is going, he
17   will profit from it, it was his and his partners' lifeblood,
18   lifeline.  Everyone wanted it to make a billion dollars.  Why
19   not?  This is what industry is for.  This is what getting
20   into business is for.  He perpetrated that wrong, a criminal
21   wrong.  It's a very serious felony, there's no way around it,
22   but it was to keep that business going.  I just never want
23   anyone in this courtroom to conclude that there was the boat,
24   there was the house, there were the lavish trips, that
25   lifestyle that we have seen in countless other fraud cases in
```

1    courtrooms like this.  That wasn't what happened here.

2           His ability to repay is only because of his

3    shoulder-to-the-grindstone work ethic in starting a new

4    business and moving forward.  A business that, as you can see

5    behind me, Your Honor, his three children depends on, the

6    obligations that he has beyond the courtroom, these are the

7    reasons why we're making this suggestion to Your Honor, this

8    recommendation, at this point.

9           THE COURT:  All right.  Thank you, Mr. Dakmak.

10          Mr. Weier, on behalf of the government, what would

11   you like to say?

12          MR. WEIER:  Thank you, Your Honor.  I've only got a

13   couple of things.  Should I come to the podium or stay here?

14          THE COURT:  Either way is fine.

15          MR. WEIER:  Okay.  This is fine.  I've only got a

16   couple things to add to my sentencing memorandum, and

17   essentially they are in response to the memorandum and

18   Mr. Stand's letter that was filed with the Court, so I will

19   try to be brief.

20          It suggested in the sentencing memorandum that the

21   government agrees that Mr. Strand did not do this crime for

22   financial gain.  I think he's qualified that, somewhat, in

23   his allocution.  I don't agree that he didn't do it for

24   financial gain.  I think he did it, and I think we can prove

25   that he did it for financial gain, and maybe it's a matter of

1   semantics, but he owed, what he called in his letter, the

2   early investors some $2 million, and that was when he started

3   the company, initially.  During the operation of the company,

4   he paid these investors interest, as he promised, and he

5   borrowed this money from many of these folks, and he

6   personally guaranteed many of these loans.  So he was on the

7   hook, personally, for this $2 million.  So when he said, as

8   he does in the letter, that I did this fraud in order it make

9   these investors whole, which is what he says several times in

10  his letter to the Court, he argues that that isn't for

11  financial gain.  But -- and he also indicates in the

12  letters -- in the letter to the Court, that he was not

13  legally obligated personally to pay these investors back.

14  That's not true.

15          He had a personal obligation, he had a contractual

16  obligation to pay these investors back, and by defrauding

17  Ascentium as he did, it lowered that, to the extent that he

18  could pay these investors back, it would be his own financial

19  gain, because his liabilities would have been lowered.

20          So I don't agree that he didn't do it for financial

21  gain.  And if what they mean by not doing it for financial

22  gain, that he didn't maintain a lavish lifestyle, I don't

23  quarrel with that.  I concede that, Your Honor, he didn't

24  maintain a lavish lifestyle, but he did gain economically as

25  the result of a fraud, or at least that was the motive.

1          I also wanted to address Mr. Strand's contention to

2    the Court that he has atoned or has made amends for this

3    fraud.  As the Court knows, this was an offense that occurred

4    and was between 2013 and 2015.  It was concluded essentially

5    in August of 2015, when Ascentium discovered the fraud.

6          Since that time, I am unaware, and I confirmed

7    today through Mr. Dakmak, that he has made any effort to make

8    any restitution to Ascentium, which is the primary victim in

9    this case.  And with respect to the other victims.  Being

10   perhaps not of the offense conduct.  But the investors that

11   he was doing the crimes in order to repay, I am of the

12   understanding that those liabilities remain unpaid as well,

13   or at least many of them do.  I think there was a letter from

14   one of his college friends who loaned Mr. Strand $400,000,

15   and that letter said that he had been fully repaid, but that

16   suggests that he selectively repaying people that he wants

17   to, because a lot of these folks are still unpaid.  So I

18   wanted to bring the Court's attention to that.

19          And lastly, I wanted to say a word about some of

20   the assertions that Mr. Strand makes in his letter with

21   respect to the victim corporation, Ascentium, and the

22   individuals involved -- and an individual involved.

23   Mr. Strand indicated to the Court, and we really are getting

24   into the weeds here with respect to some of the background

25   that Mr. Strand brought up, but he brought it up, and he said

1    to the Court that these investors who -- the company that

2    Ascentium bought, WTF, was on the hook for, as well as

3    Mr. Strand personally, that those investors were hidden from

4    Ascentium before Ascentium made the purchase of WTF.  So

5    Ascentium was unaware that WTF owed all of these investors

6    all of this money, as well as Mr. Strand owing all of them

7    all of this money.

8            In his letter to Your Honor, he indicated that he

9    actually disclosed to an individual named Alvin Willkoff, who

10   was an Ascentium executive, prior to the purchase, that some

11   of these liabilities -- that all of these liabilities

12   existed.  He called them off-the-balance-sheet liabilities.

13   So we know what that means, off the balance sheet means he's

14   not disclosing them to the potential purchaser, Ascentium.

15   He said, well, I made one of the executives aware of that.

16   And the executive said, well, you shouldn't tell the rest of

17   Ascentium, because that will nix the deal.  And they didn't.

18   And he says he was following this executive's advice,

19   Ascentium purchased WTF, and this is what happened as a

20   result.

21           In any case, I wanted the Court to know that way

22   back in November of 2016, Mr. Willkoff was interviewed by the

23   FBI, and at that time, he denied knowledge of these

24   off-the-book investors, and so -- or off-the-balance-sheet

25   liabilities, I guess you would say.

1        So I'm just saying that, and I'm not asking the

2   Court to judge who is credible here, I'm just saying, please

3   don't accept this assertion by Mr. Strand at face value,

4   because the person he says he told, says that he didn't tell.

5   So I wanted the Court to know that.

6        And the last thing is that -- and I don't know that

7   the Court is even interested in this, but Mr. Strand accused

8   Ascentium of bad faith, in terms of his termination, and said

9   in his letter that they terminated him -- they were going to

10  terminate him before they even discovered the fraud, because

11  they wanted to pay him -- not pay him certain months that he

12  would have been owed, had Ascentium sold WTF.

13       All I would like the Court to know is that

14  Ascentium denies bad faith obviously.  And because this is

15  this really irrelevant to the fraud here and because he

16  admitted that he was defrauding Ascentium, his termination is

17  proper in any case.  So I wanted to comment on that for the

18  Court.  Beyond that, I don't have anything to add to the

19  sentencing memorandum, Your Honor.

20       THE COURT:  All right.  Could you indicate your

21  reaction to the request here, that I consider a probationary

22  sentence or a day and a period of continuing effort to raise

23  the money to repay the victims, as much as possible.

24       MR. WEIER:  Yes, and I appreciate that and I

25  appreciate the opportunity to address that issue.  I

```
 1    indicated in my sentencing memorandum, had this been an
 2    isolated transaction, maybe the 3553(a) factor could be
 3    satisfied by a noncustodial sentence.  But this wasn't
 4    isolated; this was a long term, well thought out fraudulent
 5    scheme that netted at least a million dollars from a company.
 6              And when I mentioned his inability to -- or his
 7    making no efforts to make Ascentium whole, that is, he made
 8    no payments on restitution up to this point, I mention that
 9    because -- I guess my position is, it's a little late to come
10    to the Court and say, let me have another three years to make
11    restitution, when this offense occurred and ended in 2015.
12    It's -- I also am not convinced that they have been able to
13    articulate why this business that he just started, which he
14    claims in this letter is processing 5,000 leases a month,
15    can't continue to operate if he's in custody, if he has two
16    other employees who are working with him in the business and
17    can consult him at will, even if he is in custody.  And there
18    is no -- the other thing is there is certainly no guaranty
19    this business will be successful in the long run, in any
20    case, and that's all I really have to say about the
21    suggestion about a noncustodial sentence.  A noncustodial
22    sentence would not satisfy the 3553(a) factors, in my mind,
23    respectfully.
24              THE COURT:  Yeah.  Anything further, Mr. Dakmak?
25              MR. DAKMAK:  Thank you.  Just to address some of
```

1   Mr. Weier's concerns.

2          His first point about, did Mr. Strand actually

3   financially gain?  Well, as I've laid out in our sentencing

4   memorandum, Your Honor, yes, he's never hid from the fact

5   that he had personal guarantees for investors that were not

6   part of the Ascentium transaction.  And, yes, the ability to

7   repay those investors if this business, Wholesale Truck

8   Finance, Mountaineer Leasing, through Ascentium's umbrella

9   continues, like a lot of frauds that we have seen for

10  decades, people go into them thinking, if I can just get over

11  that hump, everyone will make money and it works.  It is

12  still illegal.  Mr. Strand accepts that it is illegal.  He

13  accepts the fact that what he did was illegal.

14          And I appreciate Mr. Weier conceding that there is

15  no issue that he lived a lavish lifestyle from these proceeds

16  or anything like that.  This was money that was circulated

17  through the businesses, to other investors, in a hope of

18  keeping it afloat as long as possible.  It failed, like many

19  businesses do.  And when fraud is involved, you run into the

20  reality of a criminal prosecution, which is why we are here.

21          So I take some exception with Mr. Weier's somewhat

22  cold assertion that it was financial gain for this man and

23  only this man, that was the impetus for this -- for this

24  fraud.

25          There's a larger picture here, that I think we have

1   elucidated and outlined for Your Honor in our sentencing

2   memorandum.  This was about keeping the business afloat.  It

3   was wrong, it was certainly wrong.  It was criminal, but that

4   was the genesis for it.

5            Now, as to his second point about making amends for

6   the fraud.  Well, as I told Mr. Weier, and I think when he

7   said, I've confirmed this with Mr. Dakmak, he left out one

8   special part that I will bring to the Court's attention.  I

9   don't know about anyone else, but when I have a client that's

10  accused and indicted in a case pending for fraud and there's

11  money to be repaid, as their counselor, I don't suggest

12  making the payment during the pendency of this case.  That

13  can be construed as an admission; it can be construed a whole

14  different bunch of ways.  There is a date and time, once the

15  case starts, to make that effort, and now is the time to make

16  that effort.  So as to why hasn't he repaid Ascentium with

17  the pendency of this case, with his new business operating,

18  realistically, how is he supposed to?

19           Up until a week or so ago, we were at odds as to

20  the loss figure.  The defense agrees, instead of having the

21  protracted loss calculation hearing, bringing in the experts,

22  bringing in the accountants, bringing in the executives and

23  everybody else to hash out is it 1 million, is it 800,000, is

24  it $479,000?  We are accepting $1,001,500 as the loss

25  calculation and are prepared to move forward on that, so that

1    is why there hasn't been the repayment to Ascentium.  Now is

2    the time moving forward for that.

3            Now, as to the repayment of the individual

4    investors, quite frankly, there are not a part of this case.

5    They were never victims in this case.  The government fully

6    investigated this case and could have brought that

7    allegation, could have made it part of the Rule 11 agreement.

8    Notwithstanding that, this man, moving forward, and as we see

9    in the pleadings that we have submitted to Your Honor, has

10   made the efforts in the past and continues to make the

11   efforts to make these investors whole.  He will continue and

12   continue and continue to do that.  He is one man doing that.

13   He is not Ascentium Capital, LLC, $600 million operation on

14   the west coast, he's one man doing that.

15           To highlight another point, Your Honor, as it is

16   included in the government's sentencing memorandum, the

17   government, the FBI, the Department of Justice scoured this

18   case and came up with their high watermark restitution

19   figure.  We've agreed to that.  As you will note in their

20   sentencing memorandum, though Ascentium claims it

21   is $23 million that they are owed by this man, there is no

22   justification for that statement, Your Honor.  This is why I

23   take some exception with Ascentium's statement throughout

24   this case, at this proceeding and moving forward.

25           When it relates to Evan Willkoff denying that he

*Sentencing Hearing • January 20, 2022*

 1    took part in a fraud on his company, we will let that stand

 2    as it is.  I wonder why he denied the FBI is asking him, hey,

 3    are you part of this fraud?  No.  Okay.  Enough said.  So --

 4    and, again, I'm not here to address credibility of entities

 5    and individuals, but for this proceeding, the amount that is

 6    at stake, this man's ability -- this man's ability, not a

 7    large company, not a private equity fund, to repay Ascentium

 8    this $1 million.  This is the position we are in at this

 9    point.

10          His ability to earn is predicated on his ability to

11    run his small business.  And I say, small business, because I

12    think, from accounting perspectives, anything under $50

13    million a year is considered a small business in 2021.  It is

14    a small business, it is moving in the right direction.  It

15    has been going on for two or three years, at this point.

16    It's for the -- maybe a little longer, but I know, in the

17    past year, this company is now turning profit, is now having

18    steady cash flow.  It has taken a while to do that, as any

19    fledgeling business does.

20          So that's why, at this point, he's in the position

21    to do this.  Quite frankly, if he had been sentenced in 2019,

22    prior to this pandemic, I don't know if he could make that

23    statement to Your Honor, that he could make these payments,

24    because his company was in a much different position.

25          Regarding his statements about termination in his

1   letter regarding Ascentium's statements to the FBI, to the

2   U.S. Attorney, there are some hard feelings and there's

3   emotion, and sometimes that clouds judgment.  And there may

4   be some people that aren't in this courtroom, that are glad

5   they are not in this courtroom, that are going to say certain

6   things to deflect attention away from themself.  This man,

7   from the get go, from the beginning of this case, accepted

8   responsibility.  That's why it was filed as an information,

9   with an immediate Rule 11.  It took some time to get there,

10  but he's not hiding from it.  He stands ready, Your Honor, to

11  be sentenced in this case.

12          I believe that 3553(a) requirements of a just

13  sentence do lead you down the path of a noncustodial

14  sentence.  Because of everything we set forth, what the

15  government has set forth, what we have set forth in our

16  memorandum and this case, is justice served by this man going

17  to prison, everything being equal?  No.  Quite frankly, no.

18  Not until 2022, not in 2021, not in 2020, this man's

19  opportunity to make these amends is sitting there, waiting

20  for him to grab it, and he's prepared to reach.  That's why,

21  Your Honor, I'm asking for the noncustodial sentence or at

22  least some deviation of a blended sentence of sorts, that

23  allows him to keep working and be under the monitoring of the

24  federal government.

25          If Your Honor has any questions, I'm happy to

1  answer them.  I think my client is ready to address the

2  Court, whenever you are ready, Your Honor.

3          THE COURT:  All right.  Thank you, Mr. Dakmak.

4          Mr. Strand, what would you like the Court to hear?

5          THE DEFENDANT:  Your Honor, thank you for letting

6  me speak.  In the interest of the Court's time, I will be

7  brief, and I want to stick to my notes, because I'm very

8  nervous.

9          I sincerely apologize for violating the laws in

10 this case.  I am embarrassed to admit I created false

11 invoices and other documents to fraudulently obtain over a

12 million dollars from Ascentium Capital.  I devised illegal

13 schemes in misguided attempts to repay investors who were not

14 legally owed any repayment from Ascentium.  I made personal

15 guarantees to many of these investors and many of them are

16 from friends and my family.  What I did was deceptive and it

17 was wrong.  I'm sick with regret of my foolish and selfish

18 conduct.  I take full responsibility for my actions, and I

19 humbly submit to the judgment of the Court.

20         I also continue to work toward repaying those

21 investors, even those that I have not personally guaranteed,

22 in the years to come.

23         To my former partners at Ascentium, I do apologize,

24 sincerely.  I will do whatever it takes to make amends and

25 pay my full restitution.  To everyone I disappointed when I

1   broke the law, I apologize.

2          I will spend the rest of my life working to become

3   worthy of their forgiveness.  It is not an easy thing to do.

4          My family and business associates trusted me to use

5   good judgment and to make wise choices, and getting sentenced

6   today, proves that I failed them.  The consequences of my

7   legal actions will follow me and my family for the rest of

8   our lives.  I wish I could undo the past, but I can't, and I

9   am deeply sorry.  I know this process and whatever sentence I

10  receive will have a lasting affect on my children.  Although

11  I certainly believe that to be true, what really haunts me is

12  why I didn't think of that before I did the wrong things.

13  You know, for somebody to sit up here, take care of my kids,

14  it's one thing, but what I will never forgive myself about

15  is, why didn't I think of that?  Why wasn't I looking at that

16  when I did it?  It is easy to look back now and say I didn't.

17  Sorry.

18          I will never forget the lesson I have learned

19  during the six-and-a-half years of this legal process.  In

20  particular, I learned that when it comes to business ethics,

21  that gray areas do not exist, and there is only black and

22  white.  There is legal and illegal, and the choice I made was

23  illegal.  That's my choice.  I am grateful that this country

24  does offer second chances to those that earn it.  I'm

25  determined to prove I'm worthy of that second chance.  I have

1  openly discussed my mistakes with friends and business
2  associates.  In the years ahead, I am committed to using my
3  story to help other people avoid my same mistakes.
4        As I close, Your Honor, I wanted to share a quote,
5  it sounds a little hokey, and I apologize, I read soon after
6  I pled guilty a couple years ago.  Malcolm X said, "To have
7  once been a criminal is no disgrace.  To remain a criminal is
8  a disgrace."
9        I have accepted what I have done and although I
10 will make mistakes in the future, I will never be a disgrace
11 to my children, my family or my friends or my business
12 associates again.  And I can assure you, Judge Steeh, you
13 will never see me in this courtroom or another courtroom.
14       In closing, Your Honor, I am very sorry that I
15 betrayed the trust of my former partners at Ascentium
16 Capital and they deserve to be paid back the money I took.  I
17 accept full responsible of my criminal acts of wire fraud,
18 and I will willingly accept any sentence that you see fit.
19       Thank you.
20       THE COURT:  All right.  Thank you.  Let's take a
21 short break and ask counsel for the parties to step in this
22 back room.
23       (Court recessed at 2:43 p.m.)
24                    _   _   _
25       (At 3:00 p.m. Court reconvenes; Court, counsel and

1      all parties present.)

2           THE COURT:  Thanks, folks.  You can take a seat.

3           The Court has had an opportunity to talk with

4    counsel in chambers, and the Court is -- it was suggested in

5    that room, a hearing to give the defendant an opportunity to

6    demonstrate his capacity to ultimately demonstrate that this

7    was something more than pie in the sky, I guess, that we've

8    heard from Mr. Strand, and the chance to bolster the new

9    company that is hope for an avenue or means to demonstrate

10   his interest in making a -- making -- to developing a plan, I

11   guess, of action that would allow the Court to consider

12   something along the lines that the attorneys have both

13   addressed in statements.

14           So toward that end, it was agreed that the hearing

15   will be continued on a six-month schedule.  Do you have a

16   date for me, Brianna?

17           THE CASE MANAGER:  July 28th, at 10:00 a.m.

18           THE COURT:  We will reassemble then to conclude the

19   sentencing hearing.  Anything else that we want to say for

20   the record?

21           MR. WEIER:  Nothing on behalf of the government.

22   Thank you, Your Honor.

23           MR. DAKMAK:  No.  Thank you, Your Honor.

24           THE COURT:  All right.  Thank you, all.

25           THE DEFENDANT:  Thank you, Your Honor.

*Sentencing Hearing • January 20, 2022*

1          THE COURT:  Okay.

2               (Proceedings concluded at 3:03 p.m.)

3                         _   _   _

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Sentencing Hearing • January 20, 2022*

**26**

```
 1                          CERTIFICATION

 2

 3         I, Robert L. Smith, Official Court Reporter of the

 4   United States District Court, Eastern District of Michigan,

 5   appointed pursuant to the provisions of Title 28, United

 6   States Code, Section 753, do hereby certify that the

 7   foregoing pages comprise a full, true and correct transcript

 8   taken in the matter of UNITED STATES OF AMERICA vs. DAVID

 9   STRAND, Case No. 19-20540, on Thursday, January 20, 2022.

10

11

12                          s/Robert L. Smith
                            Robert L. Smith, RPR, CSR 5098
13                          Federal Official Court Reporter
                            United States District Court
14                          Eastern District of Michigan

15
     Date:  04/07/2022
16   Detroit, Michigan

17

18

19

20

21

22

23

24

25
```